WILLIAM TOLER *et al.*, plaintiffs in error, *vs.* E. W. SEA-
BROOK, adm'r, defendant in error.

1. A landlord may collect his rent by a distress-warrant, even though the rent be payable in specifics, the value of which is not fixed by the contract.
2. When there is a contract for rent of real estate, it is none the less a renting that it is agreed that the tenant may have the use of the mules, tools, gin and other personal property actually on the place, forming part of the machinery for carrying on the farm, and a distress-warrant will be for the whole sum agreed upon.
3. When there is no day fixed for the payment of rent, but it is payable in specifics to be made on the place, and it is agreed that "it is to be first taken from the same," the rent is due in a reasonable time after a sufficiency of the crop alluded to, to pay the rent, is gathered and ready for delivery.
4. Section 2263 of Irwin's Code, protecting the crop against levy, under process against the tenant, only applies when the rent is a fractional part of the crop, and not where it is a fixed amount.
5. The lien of the landlord for his *rent*, upon the crop made, is superior to all other liens.
6. The liens provided for by the Act of 1866, in favor of landlords, factors, etc., upon crops and growing crops, attach from the date of the agreement, and the oldest is of the highest dignity.

Lien. Decided by Judge CLARK. Dougherty Superior Court. June Term, 1868.

One Holly rented from Seabrook, as administrator of Dawson, a plantation in Dougherty county, known as the Dawson place, and employed Toler as his overseer for 1867, agreeing to furinsh his family supplies, etc., and pay him $600 00.

Afterwards, on the 3rd of May, 1867, Holly agreed to let Bray & Clemmons take said place, and they rented it from Seabrook, as such administrator. In writing, it was agreed that they should take the place and stock and utensils for the balance of the year, and return them in good order, saving the usual wear and tear, at the end of the term, and they stipulated in these words: "to pay, as rent, for the use of said plantation and the stock and other property upon it, thirty-five bage of cotton weighing five hundred pounds, to be delivered at Rust & Johnson's warehouse in Albany, Georgia; (this cotton to be sound, merchantable cotton, of an

Toler *et al.*, *vs.* Seabrook, adm'r.

average quality, made of the crop of this year, on the said place,) and also five hundred bushels of sound corn, and we agree that these two items of rent shall be the first lien on said crops, and to be first taken from the same."

On the 31st of May, 1867, Bray & Clemmons, " in consideration of advances of provisions made and to be made by R. N. Reed & Co., for the purpose of assisting them to make a crop," pledged to R. N. Reed & Co., their entire crop of cotton to be made that year, to be shipped as fast as it could be picked out, to said R. N. Reed & Co., for sale on commission, and that all advances made by R. N. Reed & Co., should be first paid out of the net sale of said cotton. On the 1st of June, 1867, Bray & Clemmons took Toler as their overseer on said plantation, upon the terms of his contract with Holly.

Bray & Clemmons made but twenty-one bales of cotton and five hundred bushels of corn on said plantation.

Four of these bales of cotton had been sent to Albany, to be shipped to said R. N. Reed & Co. Upon learning this, Seabrook, as administrator, sued out a distress-warrant, and levied on said four bales, and the balance of the corn and cotton at the plantation. This balance of the cotton had been loaded on the wagons at mid-night, and the sheriff found it near the plantation. The record does not show the affidavit upon which this warrant issued. But it was admitted that it was sued out some time in December, 1867, and that it did not state that Bray & Clemmons were seeking to remove these goods from the premises. Toler, in January, 1868, levied an attachment on said property, but had no judgment at the date of this decision. The agent of the Freedmen's Bureau took the cotton and corn from the sheriff, and had it sold privately to pay off the wages of the negroes who raised the crop. After that was done, about $890 00 was left, and a motion was made, in said Court, to distribute that sum according to law. Toler claimed his wages, and for meal twice furnished to the hands, (but no sum was specified for this,) none of which had been paid. R. N. Reed & Co. showed that, on said 31st of May, 1867, they had advanced

Bray & Clemmons, in cash, $2,257 81, and in supplies, etc., for said plantation, from that time to the 2nd of November, 1867, other sums, making a total of $3,322 35, all of which. was advanced under their said contract, and that they had legally foreclosed their lien, but since the levies by Seabrook's distress-warrant, and of Toler's attachment. Seabrook, as administrator, claimed said rent under his said contract. And each claimant contended that he should be paid before either of the others.

The Judge decided that Seabrook's claim took priority to the exclusion of the others. Toler and R. N. Reed & Co. assigned this ruling as erroneous, saying that the Court erred because the affidavit did not state that Bray & Clemmons were seeking to remove the goods from the premises, because the affidavit did not show such a state of facts as entitled Seabrook, as administrator, to the process of distress, (what it showed does not appear by the record,) because a distress-warrant will not lie for rent reserved in *products*, because Seabrook's claim is an unliquidated demand, and its amount cannot be ascertained in such an *ex parte* proceeding, because the landlord's lien attach only from the time of levying his distress-warrant, because the rent reserved was more than half of the crop raised, and, if good at all, is only good to the extent of half the crop raised, as against other liens and claims.

STROZIER & SMITH and JOHN A. DAVIS, for plaintiff in error.

HINES & HOBBS, for defendant, cited the Code, secs. 2260, 2259, 2263, 4010; Smith vs. Glenn, 34 Ga. R., 181, Code, secs. 3224, 3255, 1977, 1963.

McCAY, J.

This fund, $890 00, balance of the proceeds of Bray & Clemmons' crop, is in the hands of the Court for distribution, and is claimed by three parties. First, by Toler, who was the overseer on the plantation. Secondly, by R. N.

Toler *et al.*, *vs.* Seabrook, adm'r.

Reed & Co., factors, who made advances during the year, of provisions, etc., to make the crop, and took a lien under section 1977 of the Code. (This lien was dated 31st May, 1867. Proceedings were begun under it 25th May, 1868.) Thirdly, by Seabrook, administrator of Dawson, who owned the land, and who claimed, as rent, the value of thirty-five bags of cotton and five hundred bushels of corn. This amount, as appears by written agreement, dated 3rd May, 1867, Bray & Clemmons agreed to pay to Seabrook, for " rent of the land, (eleven hundred acres,) together with the mules, stock, farming utensils and gear belonging to Seabrook, now on said place." These two items of rent to be the *"first lien on the crops,* and to be first *taken from the same."* No specific day was fixed for the payment of the rent. A distress-warrant was obtained by Seabrook. It was issued sometime in December, 1867, and in the affidavit, there was no charge that the defendants were moving the property from the place, though the evidence showed that such was the fact.

We see no ground for the interference of Toler. True, he has attached, but it is clear his claim would yield to the others, as they both have written liens, while he has none. His claim, it will be observed, is before the adoption of the present Constitution, providing that laborers shall have a lien, and no question, therefore, arises in this case under that provision. At common law, and by previous statutes, he had no lien or preference.

The dispute is really, here between Seabrook, the landlord, and Reed & Co., the factors; both have liens as provided by law, and both have reduced their liens to writing. Which has the preference?

1. We think it clear that, by the Code, sections 2260 and 2263, the lien of the landlord, *upon the crop,* is superior to all other liens. As to other property than the crop, the lien only attaches from the levy of the warrant, but as to the crop, it has a preference over all other liens.

In this case, the landlord has reduced his lien to writing, and it is older than Reed's lien by a week or two.

2. Reed's lien dates from the time it was given. It arises under the Act of 1866. Code, sec. 1977. Several questions have been made in this case under this Act, as to notice, and the general effect of the liens there provided for. But, as we hold the landlord's lien of higher dignity than any other, so far, at least, as the crop made is concerned, we do not decide these questions, except to say that this (Reed's) lien, by a fair construction of the statute, attaches from the advance. What is its effect as to preference, and how far it must be notified to the world, to make it notice, we do not decide.

3. It is, however, objected to the landlord's claim in this case, 1st, that, being payable in specifics, a distress-warrant will not lie for its collection. 2nd, that, having been issued before the rent was due, it is irregular. 3rd, that the thirty-five bales of cotton and five hundred bushels of corn, being for the use not only of the land, but for the mules, stock and farming utensils on the place, it is not properly *rent*, and a distress-warrant is not the proper remedy. We do not think any of these objections good.

By the common law, it is not necessary that the rent shall be payable in money, to sustain a distress-warrant; anything certain is sufficient. Taylor's Landlord and Tenant, section 369. It may be money, labor, chattels, etc. Our statute, Code section 4010, makes no restriction. If the plaintiff can swear to the sum due, that is sufficient. In this case, the agreement is for a specific number of pounds of cotton of a certain description, and five hundred bushels of corn. Nothing is to be supplied but the price of the articles, and we see no reason why the plaintiff may not distress for what it is worth. If he claims too much, the defendant can replevy. Code, section 4012.

4. Nor is the fact material that the defendant was to have not only the use of the land, but the mules, utensils, etc., on the place.

There is hardly ever a contract of writing, in which the use of some personal property is not included. The main thing is the rent, the use of the other things are mere inci-

Toler *et al.*, *vs.* Seabrook, adm'r.

dents. It is still rent, and a distress-warrant will lie. Taylor, sections 17 and 18.

5. Was the distress-warrant issued prematurely? There was no fixed day for the payment of the corn and cotton agreed upon. It *was* agreed, however, that it was to be paid out of the crop—to be a superior lien, and to be *first taken from the same*. We think a fair construction of the agreement is, that the rent was due in a reasonable time after the crop was gathered. As it was to be first taken from the crop, it would be due as soon as the crop was in a condition to take it. This warrant was issued in December, 1867. At that time, as the proof shows, the crop was gathered; it was not, therefore, too soon.

6. It was further contended, in this case, that, as the proof showed, the rent reserved of thirty-five bags of cotton and five hundred bushels of corn, was, in fact, more than half the crop actually made, the lien of the landlord did not obtain, and section 2263 of the Code is invoked to support this position. We do not say what would be the effect on the dignity of the landlord's lien, of a rent reserved in kind of a share more than half the crop. It is sufficient, now, to say this is not such a case. This is not a renting for a part of the crop. Clearly that section refers to cases where the landlord is to receive a *share* of the crop—a certain proportion—an uncertain amount. This is not such a case.

On the whole, we think the Court below was right, and we affirm the judgment.