## LATHROP & COMPANY *vs.* CLEWIS.

1. An ordinary distress for rent, implies that the plaintiff is the landlord, and on that theory *Driver vs. Maxwell*, 56 *Ga.*, 11, was decided. When the landlord does not distrain, but the proceeding is by his assignee under the act of 1873, both the contract and the assignment must be set out or described in the affidavit, as otherwise the parties are apparently mere strangers. A demand for payment, as to rent due, should also be alleged, or some excuse stated for the omission.

2. As the landlord's special lien dates from the maturity of the crop, and his general lien from the levy of a distress warrant, a mere transfer of a note given for rent, which transfer is made in writing before either of these events happens, is not an assignment of any lien.

3. The cases of *Greer vs. Woolfolk*, 60 *Ga.*, 623, and *Brown vs. Alfriend*, 61 *Ib.*, 12, are consistent. Taken together, they hold that a distress warrant for more than two hundred dollars may be issued by the county judge, and may, when contested, be returned either to the county court, or the superior court.

4. When animals or other personalty on the premises, are let with the same, by one entire contract, for use in cultivation, the whole sum is rent and may be collected by distress.

Landlord and tenant. Lien. Distress warrant. Before Judge SIMMONS. Houston Superior Court. May Term, 1879.

Reported in the opinion.

C. C. Duncan; Warren & Grice, for plaintiffs in error.

Samuel Hall, for defendant.

Bleckley, Justice.

On the first of October, 1875, Lathrop & Co. sued out a distress warrant against Clewis. The affidavit (made by one of the firm) alleged that Clewis was indebted to the firm "for the rent of the Everett Hog-Crawl plantation, in Houston county, for the year 1875, eight thousand seven hundred and fifty pounds of middling cotton, of the value of $1,093.95, now due and unpaid, and the like amount of eight thousand seven hundred and fifty pounds of middling cotton, of the value of $1,093.95 to become due the 15th of October, 1875; and that the said Clewis is removing his property, and especially the crop of this year made on the rented premises, from said premises; and that deponent makes this affidavit that a distress warrant may issue against the said Clewis in favor of said J. W. Lathrop & Co., for said sum of $2,187.50, rent now due and to become due as aforesaid." The warrant was issued by the county judge, and was made returnable to the county court. It was levied by the sheriff upon 6,000 pounds of seed cotton, and 350 bushels of cotton seed, in the gin-house; 18,000 pounds of seed cotton in the field ungathered, 30,000 pounds to open in the field ungathered, 500 bushels of corn in the field ungathered, and 7,000 pounds of fodder in the field in stacks, all on the Everett Hog-Crawl plantation. The pounds and bushels were estimated, not exact, and were entered in the levy as "more or less." The sheriff's entry, as well as the affidavit and warrant, bore date October 1st, 1875. On the 15th of the same month, Clewis, the defendant, replevied the property, and filed a counter-affidavit denying that he was removing his property or the crop from the premises, and denying, also, that he was the tenant

of Lathrop & Co., or that the rent distrained for was due or to become due. The issue thus formed was carried from the county court to the superior court by appeal. In the superior court the case was tried by the judge, without a jury. The facts, all agreed upon and undisputed, were as follows: Wm. R. Brown rented a plantation to Clewis for the year 1875, and took from him an instrument in these terms: "On or before the first day of October next, I promise to pay W. R. Brown or bearer eight thousand seven hundred and fifty pounds of middling cotton, delivered at Winchester in good shipping order; also, on the fifteenth of October next, I promise to pay W. R. Brown or bearer eight thousand seven hundred and fifty pounds more of middling cotton, delivered at Winchester, in good shipping order; said cotton payable for rent of plantation in Houston county, known as the Everett Hog-Crawl plantation. I agree to keep up and do all the fencing necessary, and leave all the cotton seed and manure on the place at the end of the year. Said W. R. Brown agrees to furnish six mules, and five hundred bushels of corn and three thousand pounds of fodder, one cart and steers now on the place, and the blacksmith tools. I agreeing to return the same amount of corn and fodder, mules, cart and steers and blacksmith tools in same order as they were turned over to me. Said W. R. Brown to furnish what cotton seed he has on the place, except what seed he wants to plant. Witness my hand and seal, the 30th day of October, 1874." (Signed) "Henry D. Clewis [L.S.]. Witness, J. D. Hendrick." Soon after this instrument was given, and before its maturity, Brown, for a valuable consideration, delivered it to the plaintiffs, first indorsing it thus: "Deliver the within cotton to J. W. Lathrop & Co., or their order." (Signed) "Wm. R. Brown." This was not presented to Clewis for acceptance, and he neither accepted nor refused to accept. The property levied upon was a part of the crop of 1875, made on the rented premises.

These facts being before the court, the defendant moved to

quash the distress warrant, and the court granted the motion, on what ground is not stated, but the grounds urged by the counsel were the following: 1. That the county court had no jurisdiction of the warrant; 2. That there was no relation of landlord and tenant between the plaintiffs and the defendant; 3. That there was no such written assignment of the lien as would enable the plaintiffs to distrain for rent; 4. That the affidavit on which the warrant issued was defective in not setting forth the transfer from Brown to the plaintiffs; 5. That the affidavit alleged no demand upon the defendant for payment; 6. That it was uncertain whether the lien sought to be enforced was general or special; and 7. That both a general lien and a special lien cannot be enforced by the same warrant, and that the contract was not wholly for rent, but partly for the hire of mules, etc., and how much for rent and how much for hire did not appear.

1. An ordinary distress for rent implies that the plaintiff is the landlord, and upon that theory *Driver vs. Maxwell*, 56 *Ga.*, 11, was decided. The affidavit and warrant in that case rested upon section 4082 of the Code, and we held that the affidavit need not specify the terms of the rent contract, or the time when the rent became due. Most probably the contract then involved was made prior to the act of February 24th, 1873, inasmuch as the proceeding was for the rent of premises of which the tenant had the use during that year. We need not, and do not, rule that a similar affidavit in behalf of a landlord would not still be sufficient, though the demand may have originated since the act of 1873. What we rule is, that an affidavit made in general terms under section 4082 of the Code, means the same since the act as a similar affidavit meant before the act, namely that there was, or had been, between the parties, the relation of landlord and tenant. Although that section contains the words, "any person who may have rent due," these words are restricted by sections 2285 and 2286 to landlords. As the law stood prior to the act of 1873, landlords, and

none others, were entitled to distrain; the holder, by trans-
fer, of a rent note could not sue out a distress warrant. 46
*Ga.*, 394; 54 *Ib.*, 296. In the present case, therefore, the
proceeding depends wholly upon a construction of the act
of 1873 (pamph. acts, p. 42; Code, §1972, *et seq.*), for the
plaintiff here claims as assignee, and not as.landlord. The
21st section of the act (Code, §1996) declares that " all liens
herein provided for may be assigned by writing, and not
otherwise, and under such assignment the assignee shall
have all the rights of the assignor as regulated by this act."
The fifth section of the act (Code, §1977) is as follows:
" That landlords shall have a special lien for rent on crops
made on lands rented from them, superior to all other liens
except liens for taxes, to which they shall be inferior, and
shall also have a general lien on the property of the debtor,
liable to levy and sale, which last lien shall date from the
time of levying a distress warrant. The general lien of
landlords shall be inferior to liens for taxes, the lien of
laborers, general and special, but shall rank with other liens,
and with each other, according to date—the date being
from the time of levying a distress warrant to enforce the
same. The special liens of landlords for rent shall date
from the maturity of the crops on the lands rented, unless
otherwise agreed upon, but shall not be enforced by distress
warrants until said rent is due, unless the tenant is remov-
ing his property, when the landlord may, as the Code pro-
vides, enforce liens both general and special." The assignee
can succeed to a landlord's lien only by an assignment of
the same in writing, and without such assignment the right
to enforce the lien remains with the landlord. The right is
in the latter by operation of law, as incident to the relation
of landlord and tenant, and any one claiming to have de-
rived it from him must, we think, plead and prove an
assignment. To do this involves setting forth or describing
both the contract of rent and the assignment of the lien
in the affidavit made by the assignee to obtain a distress
warrant. The affidavit stands for proof as well as for

pleading, until some material allegation which it contains is denied by a counter-affidavit. A distress warrant is itself final process (56 *Ga.*, 188) and it would be singular if one who has made no contract with the debtor could have final process of any kind against him without disclosing the source and foundation of his claim. It is quite loose enough to permit landlords themselves to distrain with no identification, in the affidavit, of the rented premises, or of the date and terms of the rent contract. Distress is a remedy which is sudden and violent, and one that has hitherto been confined to a given relation. In extending it beyond that relation, the general analogies of the law should be regarded, and the conditions of obtaining it should be no less strict than are those prescribed in section 1991 of the Code for the summary enforcement of liens upon personal property in general. That section requires that all the facts necessary to constitute the lien shall appear, and, moreover, that a demand for payment, and a refusal thereof, shall be averred, or some excuse alleged for omitting demand. The spirit and reason of this section apply no less to a distress warrant sued out by a stranger to the tenancy, claiming under an assignment from the landlord, than to a foreclosure of the various liens to which the letter has application. Where rent is not due, demand, of course, may be dispensed with, but whether the lien be general or special, and there is rent due, the assignee should make demand, if practicable, for payment before resorting to the harsh remedy of distress. If the lien of the landlord has been assigned the tenant ought at least to be informed who is the holder of it, and opportunity ought to be afforded him to make voluntary payment to the right party. He should not be surprised and startled by a seizure of his goods at the instance of an apparent stranger. How is the tenant to know whether he owes the plaintiff rent or not, so as to guide him in dealing with the levying officer? Our conclusion is that the affidavit in the present case was fatally defective.

2. We are, also, satisfied that no sufficient assignment of

the lien was shown at the trial. The order entered on the contract was doubtless a sufficient indorsement to bind the landlord as indorser, and to pass title to the paper. But neither the instrument nor the indorsement mentioned any lien, and no lien of any kind had matured at the time the indorsement was made. The exact date is not furnished by the record, but it was soon after the instrument was executed. The act which we have quoted declares, in effect, that no general lien is complete until the levy of a distress warrant, and no special lien until maturity of the crop. Either lien is but inchoate until the event happens upon which its completeness depends. Before that time, it cannot be assigned by a mere written transfer of the note or contract. Indeed, it is rather doubtful whether it can be assigned at all until it is fully in being—until it is a lien capable of dating its beginning from a levy, if it be general, or from maturity of the crop, if it be special. See 58 *Ga.*, 127 ; 60 *Ib.*, 439. Be this as it may, to pass an inchoate lien, it is necessary to assign it expressly, if even that would suffice. According to the statute, as we have quoted it above, liens " may be assigned by writing, and not otherwise." It might be gravely questioned whether a mere transfer of the note or contract would carry with it a full grown lien, if there was no mention of any lien in such note or contract. The *lien* " may be assigned by writing and not otherwise." Ordinarily, the incident passes with the principal, but this statute seems to contemplate the retention of the lien by the original party, unless he assigns *it* by writing. To assign something else, even the debt, or the evidence of debt, is not necessarily an assignment of the lien also. Especially, where the assignor becomes liable as indorser, he may wish to retain the lien for his own protection. An example of such a purpose is afforded by the case of *Bolton vs. Duncan*, 61 *Ga.*, 103, in which case, however, the landlord who sued out the distress seems also to have kept possession of the instrument with his indorsement upon it. It is to be noticed that in that case no point was made upon

the failure of both landlords to join in the distress, but only upon the effect of the second indorsement, as carrying over the right of property into a stranger to the original contract.

3. Were the warrant otherwise good and valid, we should have no difficulty on the score of jurisdiction in the county court. The case of *Greer vs. Woolfolk*, 60 *Ga.*, 623, rules the question in the affirmative. Its consistency with *Brown vs. Alfriend*, 61 *Ib.*, 12, will be manifest to whoever will compare the facts and rulings in both cases. *Greer vs. Woolfolk* holds that a distress warrant, though for more than two hundred dollars, may be issued by the county judge, made returnable to the county court, and be there adjudicated upon in case a counter-affidavit is filed. *Brown vs. Alfriend* holds that a similar warrant may, after a counter-affidavit is filed, be returned directly to the superior court, and that the county judge has all the powers of a justice of the peace in issuing distress warrants. Construing the two cases together, it is apparent that a warrant for more than two hundred dollars, issued by the county judge, may be returnable indifferently to the superior court or the county court.

4. When the hire of animals or other personalty upon a farm or plantation is included in the general estimate of rent for the whole, the entire sum is treated as rent proper, and may be collected by distress. 39 *Ga.*, 14.

Judgment affirmed.