JAMES C. WELCH, Appellant, v. W. W. ASHBY et al.,
Respondents.

**St. Louis Court of Appeals, April 9, 1901.**

1. **Rent, Distress for:** COMMON LAW: DEMAND FOR RENT:
STATUTORY CONSTRUCTION. In the case at bar, the proceed-
ing is under sections 4131 and 4133, Revised Statutes 1899, which
superseded the common-law remedy by distress for rent.

2. ———: ———: ———: LANDLORD'S WARRANT: AFFIDA-
VIT: TENANT. And to entitle the landlord to recover in this char-
acter of action, it is indispensable that he make demand and also
state in his affidavit for his landlord's warrant the exact amount
of rent in order to give the tenant the opportunity to avoid the suit
by payment of the rent demanded.

3. ———: ———: ———: ACTION: PROCEEDINGS. And if the
sum demanded is part for rent and part for something else, though
the payment for both be provided for in the lease of the premises
in a lumping sum, the action can not be maintained.

4. ———: ———: ———: ———: LEASE, TERMS OF CON-
STRUED: ESTOPPEL. In the case at bar, the whole scope of the
lease shows that the parties had in contemplation the use of the
farm by the tenant as a stock farm, in part, if not wholly so, and
that his profits from the demised premises would be largely derived
from the offspring of the cows, and it is not at all material that
the cows were not then on the farm. And in view of the case, the
rent reserved in the lease issued out of the land and not out of the
cows, nor out of the land and cows.

Appeal from Lincoln Circuit Court.—*Hon. Elliott M. Hughes,*
· Judge.

REVERSED AND REMANDED.

Welch v. Ashby.

STATEMENT OF THE CASE.

The suit was commenced in a justice's court for the recovery of the possession of appellant's farm, for non-payment of rent by respondents, sublessees of the original lessee.   Appellant recovered judgment by default before the justice. The cause was carried to the circuit court by appeal.

On the trial in the circuit court, appellant offered in evidence the following lease (omitting immaterial portions): "This lease made this sixth day of May, 1898, by and between J. C. Welch of the county of Lincoln and State of Missouri, party of the first part, and B. C. Welch of the same county and State, party of the second part, witnesseth, that the said party of the first part, for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by the said party of the second part, has demised and leased to the said party of the second part, all those premises on the Elsberry and New Hope gravel road consisting of a farm of 240 acres, owned by said party of the first part, and being a part of the real estate of Thompson Cox, deceased, for the term of five years commencing August 1, 1898, and ending August 1, 1903, except such part of the farm as may be planted in corn this year; party of the first part reserves said corn crop. And party of the first part is to furnish party of the second part sixteen hundred and fifty dollars with which party of the second part is to purchase forty cows and one bull, not more than five years old, said cattle to be Holstein or some other good combined dairy and beef cattle, and it is agreed they will not be Jerseys. Also the party of the first part is to furnish party of the second part six hundred dollars to buy horses and implements, and the said party of the second part, in consideration of the leasing of the premises and personal property aforesaid, does covenant and

Vol 88 app—26

agree to pay the party of the first part as rent the sum of twelve hundred and fifty dollars per annum, payable monthly at the end of each month, the sum of one hundred dollars, and one hundred and fifty dollars the last month of each year. The first payment to be due on September 1, 1898, and the last payment of each year shall be due August 1, providing however, if party of the second part does not realize enough to make the monthly payments in full the deficiency may be carried over until the next month, but in any event the full amount for every year must be settled at the end of every year.

"The cows are to be the property of said party of the first part, and he is to stand all loss from death or otherwise, but is not required to replace those that may die. The party of the second part is to have all offspring of said cattle, and is to have the use of said $600 five years without interest. The party of the first part is to receive all cows that are purchased for him and they are not to be his until so received and tagged or marked. On the first day of August, 1903, party of the second part is to deliver to party of the first part peaceable possession of all premises including the cows that are alive, and six hundred dollars in cash that is furnished him to equip the farm, except he is to have the privilege of maturing and removing his corn crop. It is also agreed and made a part of this contract, that the party of the second part shall have the option of purchasing the farm for eleven thousand dollars at the expiration of the five years. Also that not more than three crops of corn shall be raised on the same piece of land during the time of the lease.

(Signed)    "JAMES C. WELCH.<br>"B. C. WELCH."

The respondent objected to the lease as evidence on the ground, to-wit, "that it shows that it is not a contract of lease for the rent of premises but a general contract for the lease of

land and performance of other things; it is not the character of a contract on which this action can be based." The court sustained the objection, to which ruling the appellant saved an exception at the time. Appellant offered to prove all other facts essential to his right of recovery, all of which evidence was excluded by the court on the objections of respondent, on the same ground assigned for the exclusion of the lease, to all of which rulings appellant saved exceptions. On account of these adverse rulings, appellant took an involuntary nonsuit with leave to move to set the same aside. His motion to set aside the nonsuit proved unsuccessful and he appealed.

*Charles Martin, W. A. Dudley* and *Chas. W. Bates* for plaintiff.

The statutory summary proceeding for dispossessing a tenant for non-payment of rent applies although the use of personal property in connection with the realty is also given by the lease, and a gross rental is thereby reserved. In such case the personalty is but an incident—the rent issues out of the land only. R. S. 1899, secs. 4131-4133; Newman v. Anderton, 5 B. & P. 224; Armstrong v. Cummings, 20 Hun. 313; s. c. 58 How. Pr. 331; Fay v. Halloran, 35 Barb. 295; Sutliff v. Atwood, 15 Ohio St. 186; Mickle v. Miles, 31 Pa. St. 20; Vetter's Appeal, 99 Pa. St. 52, 55.

*Norton, Avery & Young* for respondents.

These proceedings were commenced under section 4131 and section 4133, Revised Statutes 1899. The prayer of the petition was for possession alone. "The exact amount of rent due is required to be stated in the affidavit, not because that will affect the judgment either way, but because the tenant is per-

mitted upon a demand of the sum actually due by him to avoid the suit entirely by paying the demand, etc. In this view of the statute, is is plain how important it is that the plaintiff should state the amount really due, for the amount stated must be the amount previously demanded; and when a greater amount has been demanded than is really due, the tenant can in no way avoid the suit and its costs without paying the same thus claimed." Vaughn v. Locke, 27 Mo. 290; Moores v. Martin, 23 Mo. App. 654; Cook v. Decker, 63 Mo. 328; Wolff v. Shinkle, 4 Mo. App. 197. Hence, it will be seen that, as a foundation for this suit, there must have been rent due, the exact amount must be stated that is due, and this amount, not more, shall be demanded, and, if the evidence does not show that these provisions were complied with, there can be no recovery.

BLAND, P. J.—The proceeding is under sections 4131 and 4133, Revised Statutes 1899, which superseded the common-law remedy by distress for rent. To entitle the landlord to recover in this character of action, it is indispensable that he make demand and also state in his affidavit for his landlord's warrant the exact amount of rent, in order to give the tenant the opportunity to avoid the suit by payment of the rent demanded. Cook v. Decker, 63 Mo. 328; Vaughn v. Locke, 27 Mo. 290; Moers v. Martin, 23 Mo. App. 654. If the sum demanded is part for rent and part for something else, though the payment for both be provided for in the lease of the premises in a lumping sum, the action can not be maintained. An illustration of this is found in the case of Riley v. Renick Milling Co., 44 Mo. App. 519, in which it was held, where the plaintiff had rented his farm to one Finey for one year for $450, plaintiff agreeing to board Finey and one hand for six months, that there was an agreement to pay a lumping sum for the rent of the farm and for the board, and that there was

Welch v. Ashby.

no landlord's lien on the crop for the rent, for the reason the rent was not severable from the board. · The principle is also aptly illustrated by the case of Stewart v. Gregg, 42 South Carolina 392, wherein it was ruled that where the rent reserved was fifty-four hundred pounds of lint cotton for the land and two mules, distress for the rent was not authorized—for the reason that an element of uncertainty arose as to the rent of the *land*— the rent reserved being a lump number of pounds of cotton for the rent of the land and the use of the mules.   Cranson v. Rodgers, 83 Ga. 750, is also in point.   Rodgers agreed for fifteen thousand pounds of middling lint cotton, packed in bales, to rent his plantation, the consideration being that Morris would furnish Rodgers a certain plantation, six mules, certain implements, a steam engine, a cotton gin, a packing screw, four thousand pounds of fodder, one thousand pounds of peas, sixty-five bushels of corn, one thousand bushels of cotton seed, six tons of commercial fertilizer and twenty-five hundred pounds of side meat.   Morris sued out a distress warrant for the rent and was nonsuited, for the reason it could not be ascertained from the contract how much was due for rent or how much for the corn, fodder, etc.   In the discussion of the case, however, the court said that "it is well established that the use of personalty which could be hired separately and apart from the land, may, if upon the land and used with it, be included in a rent contract and the payment to be made for the whole treated as rent," citing Toler v. Seabrook, 39 Ga. 14; Lathrop v. Clewis, 63 Ga. 282; Tabor on L. & T., secs. 17, 18; McAdams on L. & T., sec. 61; Wood on L. & T., sec. 203.

In Newman v. Anderson, 5 B. & P. 224, Lord MANS-FIELD observed that, "it must occur constantly that the value of demised premises is increased by the goods upon the premises and yet the rent reserved still continues to issue out of the house and land and not out of the goods."

In Fay, Excr., v. Hollovan, 35 Barb. 295, Fay's testator had leased defendant à tannery and the tools thereto belonging, two dwelling houses and gardens and the land around the tannery; it was ruled that the tools should be deemed a part of the tannery and that the entire rent issued out of the land.

In Vettus' appeal, 99 Pa. St. 55, the landlord had leased a planing mill with the machinery and fixtures therein for, a rental of twenty-five hundred dollars per annum; it was ruled that the rent issued out of the land, the court observing in the course of the opinion, that "rent may issue, not only from lands and tenements corporeal, but also from personal property necessary for the proper enjoyment of the premises, is settled by the case of Mickle v. Miles, 7 Cossey, 20, and indeed a proposition so obvious ought never to have been doubted." This observation is supported by Sutliff v. Atwood, 15 Ohio St. 186, where a dairy farm and the cows thereon, the latter to be increased to forty, were leased for five hundred dollars per annum; it was held that the rent issued out of the land and not out of the land and cows. Mickle v. Miles, supra, is a parallel case, being for rent of a dairy farm and stock. Toler et al. v. Seabrook, 39 Ga. 14, is a similar case; there the lease was of real estate, the tenant to have the use of the mules, tools, gin and other personal property actually on the place, forming a part of the machinery for carrying on the farm, for a stipulated sum as rent; it was held that a distress warrant might be issued for the whole sum agreed upon.

In Stein v. Stely, 32 S. W. 782 (Texas Civil Court of Appeals), the tenant had rented a furnished hotel for a stipulated rental; it was held that the furniture was incidental to the lease of the building, and that the rent reserved issued out of the land. Mr. Wood in Volume 1 (2 Ed.), section 47, of his work on Landlords and Tenants, says: "Contracts of letting and hiring furnished houses or apartments are of a mixed

nature, partaking of the nature of a demise of lands and partly of the letting and hiring of personal chattels, but in law the rent is deemed to issue out of the realty and not in part from the furniture."

"If lands and personal chattels, as lands and sheep or farming implements, or a house and furniture, etc., are leased, the rent issues out of the land." Farwell v. Dickinson, 6 B. & C. 251.

"Rent," says the 12 Eng. and Am. Ency. of Law, p. 740, "is not confined solely to the compensation for the use of the land, for chattels are often demised with the land and form no inconsiderable portion of the consideration for which rent is paid." But that which in law is not rent, can not be made so by the parties by any terms they may use or by stipulations and agreements they may incorporate in the lease. Miners Bank v. Heilner, 41 Pa. St. 452.

Turning to the lease excluded from the evidence, we find that the lessor leased his farm; that he agreed to furnish $1,650 to buy forty cows and one bull, to be his property and to be returned to him at the expiration of the lease, the lessee to have the increase; that he also agreed to let the lessee have $600 without interest during the life of the lease, with which the lessee was to buy horses and implements, and that he gave the lessee an option to buy the farm at the end of his term for eleven thousand dollars. The option and the loan of the six hundred dollars, without interest, doubtless furnished some inducement to the lessee to execute the lease, but neither the one nor the other is made a part of the consideration for its execution. The consideration, and the sole consideration, according to the terms of the lease itself, upon which the lessee agreed to pay the rent, is found in the following clause of the lease, to-wit: "and the said party of the second part (lessee), in consideration of the leasing of the premises and personal prop-

Welch v. Ashby.

erty aforesaid, does covenant and agree to pay the party of the first part (the lessor) as rent, the sum of $1,250 per annum." The personal property referred to in this clause was the forty cows and bull, which the lessee was to buy with the lessor's money. Because these cattle were not on the farm at the very time of the execution of the lease it is contended by respondent that they do not come within the rule laid down by the cases above cited. It seems to us that this contention is not sound. The whole scope of the lease shows that the parties had in contemplation the use of the farm by the tenant as a stock farm, in part if not wholly so, and that his profits from the demised premises would be largely derived from the offspring of the cows, and we do not think it at all material that the cows were not then on the farm; they were to be put on the farm and the lessee was furnished the $1,650 with which to purchase them; an arrangement more beneficial to him than it would have been had forty cows been on the farm—for he had the privilege of making his own selection and placing them on the farm when he was ready for them. He agreed to buy them and pay rent for them; they were an incident to the farm, made a necessary one under the very terms of the lease to make the farm profitable to the tenant, and we think by the terms of his contract, he and his subtenants are estopped to segregate the rent of the cows from the rent of the land or to apportion the sum total of the rent between the farm and the cows. In this view of the lease, according to all the authorities, the rent reserved in the lease issued out of the land and not out of the cows, nor out of the land and the cows. The learned circuit judge had a misconception of the tenor and effect of the lease and erred in excluding it from the evidence.

Wherefore, the judgment is reversed and the cause remanded. All concur.