JENNIE O. TYREE, Respondent, v. HARRY F. NAVRAU and HARRY A. DARLING, Doing Business under the Firm Name of MIDWEST ENVELOPE COMPANY and JAMES J. SHEPARD, Appellants.

In the Kansas City Court of Appeals, January 21, 1924.

1. **JUSTICES OF THE PEACE: Nunc Pro Tunc Entry: Justice of Peace Has no Power to Correct an Entry Nunc Pro Tunc.** A justice of the peace has no power to correct an entry *nunc pro tunc*, but the circuit court may order the justice to make such correction as authorized under section 23, Article 6, Constitution of Missouri.

2. ———: ———: **Memoranda of Justice Held Sufficient upon Which to Base an Entry Nunc Pro Tunc.** Where plaintiff, under section 6903, Revised Statutes 1919, had the right to elect to sue in justice court for possession alone without asking for payment of rent due, and thereafter sue in circuit court for rent, and where prayer for rent had been stricken out of complaint and entry ·on jacket of case made by justice showed such fact, *held* sufficient memoranda to support *nunc pro tunc* order of circuit court correcting the judgment by striking the entry as to rent.

3. ———: **Judgment Entry Regarded as Act of Justice Although It May Have Been Made by the Clerk Who Has no Official Status.** A judgment entry in justice court is regarded as the act of the justice although it may have been made by the clerk.

4. ———: **In Proceeding to Correct a Judgment Nunc Pro Tunc, Circuit Court not Confined to Records Required to be Kept by Justice under Statute.** A justice not being required by law to keep any memoranda such as made upon the jacket of the case in a proceeding to correct by order *nunc pro tunc* judgment entry of justice, the circuit court in looking for what actually occurred is not confined to the records required to be kept by justice under section 2727, Revised Statutes 1919.

5. ———: **Where Judgment is Clear and Unambiguous, It Cannot be Collaterally Attacked Except for Fraud, etc.** A judgment contained in justice docket that is clear and unambiguous cannot be collaterally attacked except for fraud, accident or mistake.

6. ———: **Not Necessary to File Transcript in Circuit Court for It to Have Power to Order Correction of Judgment of Justice by Entry Nunc Pro Tunc.** It was unnecessary to file a transcript of judgment of justice in circuit court in order for circuit court to have power to order justice to correct judgment entry so as to have it conform to judgment actually rendered by him, a mere ministerial act.

7. ———: **In Proceeding to Correct Judgment Entry by Order Nunc Pro Tunc, Parol Evidence Was Inadmissible as to What Happened at or Before Time Judgment Was Rendered, as the Records of the Court Must be Tried by the Record.** In a proceeding to correct judgment entry of justice in striking out reference to money recovery for rent by order *nunc pro tunc*, it was incompetent for defendants to show by parol testimony what occurred at or before the time judgment was rendered, but this could only be shown by the records, papers, minutes and memoranda of justice, and hence the court did not err in sustaining objections to defendants' offer to prove that before rendition of judgment the suit had been compromised and parties had agreed that in consideration of plain-

tiff's receiving judgment for possession that she would pay all costs and the judgment on the rent issue was to be in the sum of no money.

8. ————: **Proceeding to Correct Judgment Entry Proper Where Remedy by Appeal from Judgment Was Inadequate.** Where appeal from judgment of justice of the peace granting possession of premises and in which there was also erroneously entered a judgment for rent in sum of "no money" was not an adequate remedy for relief from such entry because plaintiff would have lost the benefit of the judgment obtained and been forced to trial anew in the circuit court; and hence a proceeding to require the justice to correct the judgment entry by striking so much of it as related to rent was proper.

9. ————: **In Proceeding to Correct Judgment Entry, Court Properly Sustained Objection to Offer to Prove Defendants Had a Meritorious Defense to Suit for Rent in Justice Court.** In a proceeding to correct judgment entry of justice entered in suit for possession of premises, by striking out part of entry in reference to rent, *held* that as there was an amendment striking out prayer for rent and records of justice showed same, the court properly sustained objection to the offer to prove that defendants had a meritorious defense to suit for rent in the justice court.

10. ————: **Petition in Proceeding to Correct Judgment Entry of Justice Held to State a Cause of Action.** Petition in proceeding to require justice of peace to correct judgment entry by striking out recitals with reference to "rent," contained in judgment rendered in suit for possession of premises, which set forth the judgment and alleged that the judgment entered by the clerk was not rendered by the justice but was entered by clerk through mistake, *held* sufficient to state a cause of action.

Appeal from Circuit Court of Jackson County.—*Hon. James H. Austin*, Judge.

AFFIRMED.

*Pierre R. Porter* for respondent.

*Achtenberg & Rosenberg* for appellants.

BLAND, J.—This is an action in equity to require a justice of the peace to correct a judgment entry in his docket by striking out the words "to rent in the sum of

$ (no money) possession (only)'' and the words ''and rent in the sum of $ (no money).'' The court entered a decree ordering the correction of the record entry as prayed, and defendants have appealed.

The facts show that on March 5, 1921, plaintiff filed a landlord's complaint in the court of James J. Shepard, a justice of the peace of Kaw Township, Jackson County, Missouri, against Harry F. Navrau and Harry A. Darling, partners doing business as the Midwest Envelope Company, who, together with said justice of the peace, are the defendants in the case at bar. The suit was for rent and possession of a certain part of a building in Kansas City, Missouri, rented to the defendants therein by plaintiff. Service was had upon the defendants. On March 17, 1921, a judgment was entered in the cause, the material parts of which are as follows:

''Mar. 17, 1921, 10 A. M., comes plaintiff herein by her atty. and amends L L. C. by striking out the prayer for rent (money).

''On the 17th day of March, 1921, 10:30 A. M. comes plaintiff herein by her attorney and the defendants by their attorney, and said cause is taken up, and the evidence being fully heard on behalf of the plaintiff & dfts., the justice finds that the plaintiff is entitled to the possession of the premises described herein, and to rent in the sum of $ (no money) possession (only) with all costs, by ag'mt to be assessed against the plaintiff.

''It is further ordered and adjudged by the justice that the plaintiff do have and recover of and from the defendants possession of the premises herein to-wit:

(here the judgment describes the premises) and rent in the sum of $ (no money) & by ag'mt and costs of suit to be assessed against the plaintiff herein incurred, and that execution and writ of restitution issue therefor.''

Thereafter plaintiff filed suit in the circuit court of Jackson County, Missouri, against the said defendants seeking to recover the sum of $750 as rent. Defendants in their amended answer pleaded the judgment of the

justice as *res adjudicata*. The cause coming on for trial the court indicated that the judgment of the justice was a judgment against plaintiff on the question of plaintiff's right to recover rent and therefore was *res adjudicata*. Plaintiff thereupon took a non-suit and brought this proceeding to correct the judgment of the justice. The theory upon which the correction is sought, as we understand it, is that the justice of the peace has no power to make *nunc pro tunc* entries, but under the supervisory powers of the circuit court that court may order the justice to correct the judgment if sufficient matter appears upon which to base a judgment *nunc pro tunc*.

It is true that a justice of the peace has no power to correct an entry *nunc pro tunc*. [Kelley's Justice Treatise, sec. 14; Norton v. Porter, 63 Mo. 345; Smith v. Chapman, 71 Mo. 217, 218; 24 Cyc. 604.] However, the circuit court may order the justice to make such a correction. [Kelley's Justice Treatise, supra; Norton v. Porter, supra; Sec. 23, Art. 6, Constitution of Missouri; sec. 2436, R. S. 1919.]

In support of her right to have the judgment of the justice corrected, plaintiff introduced in evidence the landlord's complaint showing that the prayer for rent in the sum of $500 had been stricken out by pen from the printed form used; also the jacket of the justice in which the papers in the case were kept. The evidence shows that on the back of this jacket the justice was accustomed to make memoranda of the proceedings in the case as they occurred  The back of the jacket in this case contains the style and number of the case, the date the summons was issued and when returnable and under "remarks" appears the following—"Continued by defendants until 3-17-21, 7 A. M. 3-17-21 plaintiff allowed to amend petition by striking out prayer for rent. Judgment for plaintiff for possession of property and by agreement plaintiff pays costs."

Defendants sought to show by the justice what actually occurred at the trial of the case but the court upon objection refused to permit the testimony. Ob-

jection was made by plaintiff to the testimony of the clerk as to what occurred when he made the judgment entry'in the docket but the court ruled that he would hear the testimony subject to the objection. After the testimony was given plaintiff withdrew her objection.

The testimony of the clerk as to what occurred is not as clear as it might be, but what we get from it is as follows: That the justice holds that where possession and rent are asked for he cannot enter a valid judgment for possession only unless the prayer for rent is stricken out except upon agreement of the parties; that in writing up the judgment he had to ask the justice what kind of a judgment to enter because the jacket did not indicate as to whether there had been any judgment on the issue of rent and it was necessary for him to put in the judgment whether there was to be any money recovered for the reason that "this involves a lot of money. And I wrote no money because I wanted to make it plain to him (the constable), if a writ is issued, that there would be no money collected. . . . I have got to put it in here and make it plain to the constable, who`is not a lawyer, that I am going to issue the writ to." The justice told the witness that "this case is for no money, and for possession and by agreement plaintiff pays costs." The witness further testified that the jacket did not contain all of this information. It said nothing about it being for no money but that is what the justice told him. He testified that he wrote up the judgment as directed by the justice; that "he (the justice) told me to write it up 'no money' and 'by agreement plaintiff to pay the costs.'" It was not the intention to write a judgment in favor of the defendants on the issue of rent because "if there was a judgment rendered for the defendant, Judge SHEPARD would have to make the judgment for the defendant and I would have had to have gone to the Judge to know whether I would use Kelly's rubber stamp for the entry." "Now, my instructions with reference to the record are that if the judgment is

for the defendant, that plaintiff takes nothing by his suit and defendant go hence without day.''

It is quite clear from the testimony of the clerk that neither the justice nor himself intended to enter any judgment on the issue of rent. We think there is enough shown by the papers in the case and on the back of the jacket upon which to base a *nunc pro tunc* entry even without the testimony of the clerk. In the printed form of the landlord's complaint, used in the case, the prayer for rent is stricken out. While it is true that the justice had a right to render judgment on the issue of rent without there being any prayer for rent (Shields v. Stillman, 48 Mo. 82), plaintiff under the statute, section 6903, Revised Statutes 1919, had the right to elect to sue for possession alone without asking for the payment of the rent due, and thereafter sue in the circuit court for the rent. [Shields v. Stillman, supra, l. c. 88.] It is quite apparent from the fact that the prayer for rent was stricken out that plaintiff was suing for possession only, and the justice had no right to render or enter a judgment on the issue of rent. The circumstances that the prayer for rent was stricken out and that the memoranda on the jacket shows a judgment for possession alone, nothing appearing thereon in regard to the issue of rent, are sufficient upon which to base an entry *nunc pro tunc*. [Blize v. Castlio, 8 Mo. App. 290; Williams v. Walton, 84 Mo. App. 433; Lindsey v. Nagel, 157 Mo. App. 128; Gamble v. Daugherty, 71 Mo. 599.] The judgment itself seems to be irregular on its face. If it had been intended to render a judgment for defendants on the issue of rent, we would expect to find it reading, ''It is ordered and adjudged by the justice that the plaintiff do have and recover of and from the defendants possession of the premises'' (describing them) ''and that plaintiff on her suit for rent take nothing by the suit and defendants go hence without day, and by agreement the costs are assessed against plaintiff.'' [Sec. 2840, R. S. 1919.] It would seem, however, that such a judgment could only be rendered by agreement. [Sec. 6901,

R. S. 1919; Welch v. Ashby, 88 Mo. App. 400.] It is not clear whether the docket entry shows a judgment *by agreement* on the issue of rent but whether or not it does is immaterial. In fact it is unnecessary for us to decide whether the entry is a judgment on the issue of rent, but assuming that it is, as contended by defendants, it should be corrected as prayed for by plaintiff.

It is true that there is nothing known technically as a clerk of a justice; the justice is regarded as his own clerk, and a judgment entry is regarded as the act of the justice although it may be by the clerk. [Carter v. Exposition Co., 124 Mo. App. 530.] It is also true that the justice is not required by law to keep any memoranda such as is made upon the jacket in this case. [Sec. 2727, R. S. 1919.] In view of these things defendants insist that we may not look to anything but the docket which the justice is required to keep by law for what occurred. We think there is no merit in this contention. In looking for what actually occurred the court is not confined to the records required to be kept by the court under statute. From a reading of the cases, supra, on the question as to what papers may be looked to in a proceeding to correct a judgment *nunc pro tunc,* it will be seen there is no merit in the contention.

There are such cases as Hedgewood v. Sheik, 233 S. W. 58, cited by the defendants, that hold that the docket of the justice may not be contradicted by parol and if the entry is clear, unambiguous and no fraud, accident or mistake is charged, the docket entry is the best and only competent evidence as to what judgment the justice in fact rendered. See also Carter v. Exposition Co., supra, l. c. 537, where it is said a justice possibly "could not be ordered to change a docket entry showing a judgment which might properly have been given on proof, *in pais,* that the one actually given was different." We have no complaint to make of these cases. However, in the case at bar no effort is being made to correct the docket entry by parol. We concede that a judgment contained in justice docket that is clear and unambigu-

ous, cannot be collaterally attacked except for fraud, accident or mistake, but no collateral attack is attempted to be made on the judgment in this case. Instead of attempting to attack the judgment of the justice the proceeding is merely to have the record show the judgment actually rendered by the justice; in other words, this is a proceeding in equity in the circuit court under its supervisory powers over the justice court, "to make the entry speak the truth," as stated by Judge Goode in Carter v. Exposition Co., supra, l. c. 540. This case is wholly unlike the case of State ex rel. v. Wurdeman, 192 Mo. App. 657, cited by the defendants. In that case it was sought to correct judgments of the justice by proof outside of the record tending to show that the judgments actually rendered by the predecessor of the justice in office were different from the ones entered. This proof consisted of certain transcripts that had been made by the predecessor and filed in the circuit court. These transcripts were made after the trial in the justice court and were mere copies of the proceedings in the justice court, made after the judgments had been entered. Of course, these transcripts would not have been admissible had the proceeding been to correct an entry *nunc pro tunc*. [See Blize v. Castlio, supra, l. c. 295.] In Williams v. Walton, supra, l. c. 441, it is said—

"The power to make an entry *nunc pro tunc* in a case after the end of the term does not authorize the entry of an order which ought to have been made, but only those which were actually made, the evidence of which is preserved by some minute made or paper filed *at the time*." (Italics ours.)

It is insisted that the court had no right to order the justice to correct the docket in the absence of a transcript having been filed in the circuit court. In support of this defendants, among other cases, cite the case of Carter v. Exposition Co., supra. While some of the things said in the very able opinion by Judge Goode rendered in that case might very well be applied to the facts

in this case, that case was not brought upon the same theory as was the one now before us. That case was one where the judgment of the justice in an action in replevin had been inadvertently entered by the justice's clerk in a form other than that prescribed by the statute in such cases. It was held that under section 2851, Revised Statutes 1919, concerning the filing of transcripts of justices in the circuit court, the transcript having been so filed in that case, the circuit court could cause the judgment to be amended to make it conform to the law. Judge GOODE stated in that case, 1. c. 534, that it was not necessary to determine whether the court could correct the judgment in that case on the ground that it possessed superintending control over justice courts, for the reason that there were other statutes bearing directly on the question (referring to what is now section 2851, Revised Statutes 1919). It will thus be seen that even in a case of the kind under consideration in that decision it was not held that it was necessary that a transcript be filed in the circuit court in order to give that court power to correct the judgment of the justice court. It would seem that in view of the fact that the statute (secs. 2850 and 2851, R. S. 1919), providing for the filing of such transcripts, makes the judgment of the justice, when such transcript is filed, of equal dignity with a judgment of a circuit court and gives the circuit court control over it, its right to correct the judgment of the justice under such circumstances would more clearly appear. However, as before stated, this proceeding is unlike that in the case of Carter v. Exposition Co., supra, and we know of no good reason why it was necessary to file a transcript of the judgment in the circuit court in order for the circuit court to have power to order the justice to correct his judgment entry so as to have it conform to the judgment actually rendered by him, a mere ministerial act.

From what we have said the court did not err in sustaining the objections to defendants' offer to prove

that at the time the judgment was rendered it was explained to the justice by the attorneys for the respective parties that the suit had been compromised and settled and that it was requested that the justice make a finding "of rent in the sum of no money." Nor did the court err in ruling out the offer to prove that before the judgment was entered there was an agreement of the parties to the effect that in consideration of plaintiff's receiving judgment for possession, plaintiff was to pay all costs and the judgment on the rent issue was to be in the sum of no money. It was competent for plaintiff to show by parol testimony what happened at or before the time the judgment was rendered. As before stated, this could only be shown by the records, papers, minutes and memoranda of the justice. It was incompetent for defendants to show by parol testimony what occurred at the time even though this testimony is consistent with the judgment entered by the clerk. It was said in Lindsey v. Nagel, supra, 1. c. 137, "It is the inflexible rule in this State, following the common-law rule, that the records of the court must be tried by the record."

It is insisted that plaintiff had a remedy by appeal from the judgment but this was not an adequate remedy because plaintiff would have lost the benefit of the judgment obtained by the justice and would have been forced to trial anew in the circuit court. [Carter v. Exposition Co., supra, 1. c. 540.] From what we have said the court properly sustained the objection to the offer to prove that defendants had a meritorious defense to the suit for rent in the justice court.

It is insisted that the petition failed to state a cause of action and that the court should have sustained defendants' motion for judgment on the pleadings aimed at the petition. The petition after setting forth the judgment entered in the justice court alleges—

"Plaintiff further states that the foregoing judgment entry which was recorded by the clerk of the said justice of the peace in said justice docket does not cor-

rectly recite the judgment which was rendered by said justice, for the reason that said record entry recites that plaintiff is entitled 'to rent in the sum of $ (no money) possession (only),' and that plaintiff have and recover from the defendant 'rent in the sum of $ (no money);' that said recitals referring to 'rent' do not conform to the judgment which was rendered by said justice and are surplusage and nullities for the reason that no issue of rent was before said justice for determination at said trial, that no such issue was decided by said justice; and that said justice had he attempted to render a judgment for rent would have been without jurisdiction and authority so to do; that said recitals referring to rent were written into said judgment entry by the clerk of said justice by mistake, and renders said judgment in so far as it may purport to be an adjudication upon the issue of rent due and unpaid, null and void.

"That plaintiff has no adequate remedy at law."

There are a great number of points made against the petition and it is not necessary for us to mention all of them, for the reason that what we have already said disposes of quite a number of them; for instance, the question as to whether plaintiff had adequate remedy at law by appeal. The petition does not show, as contended by defendants, that plaintiff "participated in and agreed to the judgment." The petition merely recites the judgment actually entered. This is copied in the petition and is what the petition seeks to have corrected. The method of attack upon the petition in this case is not looked upon with favor. See McKee v. Downing, 224 Mo. 115, 130, where the Supreme Court said—

"Defendant is not entitled to judgment upon the mere filing of a petition unless the petition states such facts as clearly show that plaintiff is not entitled to judgment; for instance, that it is clearly barred by limitations. Even if it fails to state a cause of action, its defects may be raised by demurrer, or, if totally defective, by an objection to the introduction of any testimony."

215 Mo. Sup.—41.

Whatever may have been alleged in the petition by way of surplusage, which may be disregarded (Johnson-Brinkman Co. v. Bank, 116 Mo. 558, 567, 568), we think that the following things alleged in the petition make it sufficient at this stage: That a judgment was entered in the justice court setting forth what it was; that the judgment entered by the clerk was not rendered by the justice but the same was entered by the clerk through mistake, setting forth the judgment actually rendered and that the clerk should have entered. This was sufficient to state a cause of action in equity "to make the entry speak the truth," under the supervisory powers of the circuit court. It is stated in Carter v. Exposition Co., supra, l. c. 538, quoting from 51 L. R. A. 33, that—

" 'As is often stated in the decisions, the power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame and formulate new and additional means, writs, and processes whereby it may be exerted.' "

The court then says—

"In our opinion the superintending power of superior tribunals in ministerial matters, ought to be given free play by the use of all available agencies and procedures which can be resorted to without prejudice to the rights of litigants."

In the case at bar there was no unjustifiable delay in bringing the action to correct the judgment entry. Nothing has intervened to prejudice the right of the defendants.

The judgment is affirmed. All concur.