Sidney **KLEG** and W. P. Bundy, d/b/a
Bundy-Kleg Construction Company,
Relators-Appellants,

v.

Hon. Jules M. O'NEIL, Magistrate, First
District, St. Louis County, Re-
spondent-Respondent.

No. 33445.

St. Louis Court of Appeals,
Missouri.

Jan. 20, 1970.

Klamen & Weisman, Clayton, Burton H.
Shostak, St. Louis, Mo., for relators-
appellants.

Paul Taub, Jerry A. Klein, Overland,
for respondent-respondent.

DOERNER, Commissioner.

Relators' petition to the Circuit Court of
St. Louis County for a rule on the re-
spondent magistrate was dismissed upon
respondent's motion that the matter was
moot, and the relators appealed. We af-
firm.

No evidence was presented in the pro-
ceeding before the Circuit Court and the
record before us consists in the main of
relators' petition for a rule, and of re-
spondent's motion to dismiss together with
certain exhibits attached thereto and made
a part thereof. The essential allegations
in relators' petition were that Turken

Plumbing Company recovered judgments against the relator W. P. Bundy in two cases pending in the Magistrate Court of the First District, St. Louis County, the amounts of which judgments were not stated. Turken Plumbing caused an execution and garnishment to be served on Bicentennial Civic Improvement Corporation to collect such judgments, and without interrogatories having been filed or the garnishee having been ordered by the court to pay, the garnishee paid into court the sum of $1218.68. ´Relators Sidney Kleg and W. P. Bundy, a partnership doing business as Bundy-Kleg Construction Company, thereupon filed their interplea, supported by affidavit, claiming that the money attached belonged to the partnership and could not be attached for the individual debt of a partner. Relators also filed their "Motion to Dismiss and Quash Garnishment," but the grounds of their motion is not stated in their petition for a rule, nor is a copy attached to their petition as an exhibit. Relators further alleged in their petition that on October 24, 1968, the respondent heard arguments on relators' motion to dismiss and quash the garnishment, "but did not hear any evidence on the issue of whether the funds paid into Court were partnership funds"; and that

"Relators state that they believe Respondent will deny Relators' Motion to Dismiss and Quash Garnishment without having heard evidence relating to the ownership of the funds, that if the Motion is denied Relators will be unable to appeal from the ruling on the Motion, it not being a final judgment, and that Relators will be denied their property without having the case heard on the merits, and will thus be deprived of their property without due process of law."

In their prayer relators asked that the Circuit Court, " * * * order Respondent to sustain the Motion to Dismiss and Quash Garnishment or, in the alternative, order Respondent to hear evidence related to whether or not the funds paid into Court are partnership funds, to enter a final judgment on the merits raised by the interplea, and for such other Order as this Court deems appropriate."

It will be noted from the prayer of relators' petition that they were not asking the Circuit Court merely for a rule on the respondent requiring respondent to pass on relators' Motion to Dismiss and Quash the Garnishment; what they prayed for was a rule on respondent directing him as to the manner in which he was to decide their motion, that is, to sustain it. It will also be noted that nowhere in relators' petition did they allege that they had sought or attempted to offer any evidence in support of either their interplea or their motion to dismiss and quash the garnishment and that the respondent had declined and refused to hear or receive such evidence.

Relators' petition for a rule on the respondent was filed on October 29, 1968. On the next day the Circuit Court issued an order on the respondent that he show cause why a rule should not issue against him, " * * * commanding that the said respondent Magistrate be compelled to sustain the motion to dismiss and quash garnishment * * *," which was made returnable on November 12, 1968. Although issued on October 30, the order to show cause was not served on respondent until October 31, 1968. Before then, on October 30, the same day on which the order to show cause was issued, the respondent overruled and denied both the relators' interplea and their motion to dismiss and quash the garnishment. On November 12, 1968, the return day, respondent filed a motion to dismiss relators' petition for a rule, setting up, among other grounds, that respondent had ruled on the relators' interplea and their motion to dismiss and quash the garnishment before the order to show cause had been served on respondent, and that the matter was therefore moot. The court subsequently sustained respondent's motion to dismiss

relators' petition for a rule, " * * * because the matter is moot," and after an unavailing motion to set aside that order or for a rehearing relators appealed.

There is no doubt in our minds that in the light of relators' petition for a rule the court should never have issued its order to show cause in the first instance. This for the reason that relators sought not merely an order of the Circuit Court directing respondent to rule on their motion to dismiss and quash the garnishment, but an order directing respondent as to what respondent's decision on the motion was to be, which clearly was beyond the authority and jurisdiction of the Circuit Court. Under our Constitution and statute, the circuit courts " * * * have a general superintending control over all inferior courts and tribunals in their jurisdiction, and may issue and determine original remedial writs." Art. V, § 4, Const.Mo.1945, V.A.M.S. and see § 478.-070(4), RSMo 1959, V.A.M.S. Such superintending control is not unlimited and does not include the exercise of the power to direct an inferior court as to the manner in which the latter is to rule in a matter involving the exercise of discretion. That limitation was pointed out by this court in State ex rel. Auto Finance Co. v. Landwehr, 229 Mo.App. 1221, 71 S.W.2d 144, 145, in which, after reviewing the common-law origin of the power of superintending control, we said:

"So it is apparent that in its truest sense the exercise of the power of superintending control has to do with the matter of keeping an inferior tribunal within the bounds of its jurisdiction by the issuance of the old extraordinary common-law writs of prohibition, mandamus, certiorari, and the like, yet it must also be conceded that in the development of our scheme of jurisprudence the power has been held to include the authority to issue other writs, processes, and orders essential to the complete exercise of the power, and

relating to matters quite outside any question of jurisdiction. However, in the exercise of the power of superintending control by the superior courts of this state, as in most states, when it is to be resorted to for an authority over and above that comprehended by the ordinary common-law writs, it would seem that it extends only to the matter of compelling the proper performance of purely ministerial duties, and not to matters involving discretion or the exercise of a judicial power. Carter v. Louisiana Purchase Exposition Co., 124 Mo.App. 530, 537, 102 S.W. 6; State ex rel. v. Wurdeman, 192 Mo.App. 657, 662, 179 S.W. 964; Tyree v. Midwest Envelope Co., 215 Mo.App. 630, 639, 258 S.W. 717."

To the same effect see State ex rel. St. Louis Boiler & Equipment Co. v. Gabbert, Mo.App., 241 S.W.2d 79 and the cases cited therein.

Thus, even if relators' petition had been properly drawn, the extent of the relief which relators might have obtained was a rule on the respondent magistrate requiring him to pass on relators' interplea and their motion to dismiss and quash the garnishment. That is precisely the relief which they did obtain, from the respondent, before the order to show cause was served on him and (according to relators on oral argument) before the respondent had any reason to suspect that the relators would seek a rule. The respondent's decision on the matters pending before him involved the exercise of his discretion, and whether or not his rulings were correct is not before us, nor do we express any opinion regarding them. In short, having obtained all the relief to which relators might have been entitled under their petition, the matter became moot, as the court properly ruled. State ex rel. Myers v. Shinnick, Mo., 19 S.W.2d 676; State of Missouri ex rel. Weber v. Vossbrink, Mo.App., 333 S.W.2d 298; Western Auto Supply Co. v. Banner, Mo. App., 288 S.W.2d 402. Relators argue

that the case did not become moot because the Circuit Court might have entered an order requiring the respondent magistrate to enter a nunc pro tunc order setting aside the respondent's decision on relators' interplea and granting relators a hearing thereon. In the first place, relators did not amend their petition or otherwise ask for such relief in the court below, and are therefore *in no position to ask for it for the* first time on appeal. Furthermore, if the respondent erred (regarding which we express no opinion) a nunc pro tunc entry cannot be employed to correct a judicial error nor to render a judgment different from that actually rendered. Wiggins v. Perry, 343 Mo. 40, 119 S.W.2d 839, 126 A.L.R. 949; Burnside v. Wand, 170 Mo. 531, 71 S.W. 337, 62 L.R.A. 427; Aronberg v. Aronberg, Mo.App., 316 S.W.2d 675.

For the reasons stated the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.